**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

THE UNITED STATES OF AMERICA,

     Plaintiff,

     v.

STATE OF CONNECTICUT, et al.,

     Defendants.

No. 3:26-cv-568-AWT

JULY 27, 2026

**STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF PLAINTIFF UNITED STATES OF AMERICA'S**
**MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**

Pursuant to Local Rule 56(a)1, the United States hereby submits the following statement of undisputed material facts in support of its motion for summary judgment.

### I.    The State of Connecticut Trust Act

1.    The State of Connecticut Trust Act, Conn. Gen. Stat. § 54-192h ("Act") prohibits law enforcement officers from arresting or detaining individuals pursuant to civil immigration detainers except in certain limited circumstances. Act § (b)(1)(A).

2.    The Act prohibits law enforcement officers from expending or using time, money, facilities, property, equipment, personnel or other resources to communicate with a federal immigration authority regarding the custody status or release of an individual targeted by a civil immigration detainer, unless certain conditions set forth in subsection (e) of the Act, set forth in paragraphs 7 and 8 below, are satisfied. *Id.* § (b)(1)(B).

3.    The Act prohibits law enforcement officers from arresting or detaining an individual based on an administrative warrant. *Id.* § (b)(1)(C).

4.    The Act prohibits law enforcement officers from granting authority to access an individual who is in the custody of a law enforcement agency to interview such individual except

in certain limited circumstances, even if that individual is the subject of an administrative subpoena issued pursuant to 8 U.S.C. § 1225(d)(4)(A), in which case the individual must be the subject of a court order under 8 U.S.C. § 1225(d)(4)(A). Act § (b)(1)(D).

5.      The Act prohibits law enforcement officers from performing any function of a federal immigration authority under 8 U.S.C. § 1357(g) or any other law, regulation, agreement, contract, or policy. Act § (b)(1)(E).

6.      The Act requires the written authorization of an alien for federal immigration authorities to communicate with local law enforcement regarding the "confidential information" of such alien (including "income tax or other financial records," "social security numbers," whether such individual receives "public assistance," etc.) or a determination that the information is "necessary in furtherance of a criminal investigation or terrorism" or "otherwise required by law." *Id.* § (d).

7.      The Act requires that, upon receipt of a civil immigration detainer, law enforcement officers "provide a copy of the detainer to the affected individual who is the subject of the detainer and inform the individual whether the law enforcement agency intends to comply with the detainer." *Id.* § (e)(1).

8.      Upon a law enforcement officer's notification to ICE in response to a detainer "that an individual is being, or will be released on a certain date, the law enforcement agency shall promptly provide to the individual and to the individual's attorney or shall make a good faith effort to contact one other individual who the individual may designate, a copy of such notification as well as the reason, in writing, that such law enforcement agency is complying with the detainer." *Id.* § (e)(1).

**II.      The State of Connecticut Policy Guidance**

9.      On March 26, 2026, Connecticut Attorney General William Tong, on behalf of the Connecticut Office of the Attorney General, issued the Statement of Policy and Guidance Regarding Immigration Matters as a Memorandum to Public Officials, Public Agencies and Private Organizations. *See* Dkt. No. 1-2 ("Policy Guidance") at 1.

10.     Attorney General Tong issued the Policy Guidance pursuant to his authority as the chief legal officer and chief civil law enforcement official of the State of Connecticut, and pursuant to the Connecticut Constitution and General Statutes § 3-125 to provide clarity and guidance as to Connecticut's legal position on the matters set forth therein. Policy Guidance at 1.

11.     The Policy Guidance provides instruction to public officials, public agencies, and private organizations as a statement of policy of the State of Connecticut and Office of the Attorney General concerning immigration law and related legal matters, proceedings, and enforcement actions. *Id.* at 1.

12.     The Policy Guidance provides that "personnel are generally not required to disclose any non-public information, including personal information or immigration status, unless presented with a valid judicial warrant or subpoena." *Id.* at 12.

13.     The Policy Guidance provides that "ICE detainer requests are just that: requests. They do not carry the weight of a warrant, and they impose no legal obligation for local law enforcement to detain, arrest, or jail someone." *Id.* at 11.

14.     The Policy Guidance provides that administrative subpoenas "generally do not require immediate responses and can be challenged in court. Unlike judicial subpoenas, penalties for failure to comply with an administrative subpoena are not automatic and may only occur if a subpoena enforcement action is brought in federal district court." *Id.* at 11.

### III.    The City of New Haven Executive Order

15.    On July 23, 2020, City of New Haven Mayor Justin Elicker issued An Executive Order to Affirm New Haven a Welcoming City. Dkt. No. 1-3 ("EO") at 1.

16.    The EO prohibits City employees from disclosing an alien's immigration status without the consent of the alien unless other limited circumstances are satisfied. EO at §§ III(6), (7).

17.    The EO prohibits law enforcement agencies from inquiring about or engaging in activities to ascertain an individual's immigration status. *Id.* at §§ III(2)–(4).

18.    The EO provides that "[l]ocal law enforcement agencies . . . shall not use agency or department resources . . . to . . . [d]etain or arrest a person, based on ICE detainer requests or administrative warrants entered by ICE . . . unless required by law." *Id.* at § III(8).

19.    The EO forbids city employees from using their resources "to investigate, enforce or assist in the investigation or enforcement of any federal program requiring registration of individuals on the basis of race, gender, sexual orientation, religion or national or ethic origin." *Id.* at § III(5).

20.    The EO subjects "[a]ny employee of the City who is found to have violated this Executive Order" to "discipline in accordance with applicable union contract [sic], civil service rules, or department work rules." *Id.* at § III(10).

21.    Mayor Elicker controls the administration and enforcement of the EO. *Id.* § III(11).

4

Dated: July 27, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHARLES E.T. ROBERTS
Senior Counsel to the Assistant Attorney
General

JACQUELINE COLEMAN SNEAD
Deputy Director
Enforcement & Affirmative Litigation Branch

*/s/ Jackson M. Story*
JACKSON M. STORY
Trial Attorney (FL Bar No. 1032001)
U.S. Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044
(202) 451-7304
jackson.m.story@usdoj.gov

*Attorneys for the United States of America*