**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff* | : | 3:26-CV-00568-AWT |
| v. | : | |
| STATE OF CONNECTICUT, ET AL.<br>*Defendants.* | : | SEPTEMBER 24, 2026 |

**DEFENDANTS CITY OF NEW HAVEN AND MAYOR JUSTIN ELICKER'S**
**REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants City of New Haven and Mayor Justin Elicker (collectively, the "New Haven Defendants") submit this reply memorandum in support of their Motion to Dismiss (ECF No. 29). For the reasons set forth herein and in their opening memorandum, the New Haven Defendants' Motion to Dismiss should be granted.

## I. New Haven's Order Requires Compliance With Federal Law and Does Not Impede or Violate Any Federal Directive.

By its terms, the Welcoming City Order requires New Haven officers and employees to comply with federal immigration law (indeed, *any* law). *See* ECF No. 30 ("Mem. of Law") at 8, 12-13, 19, 21. Plaintiff has not cited a single instance in which the New Haven Defendants have failed to meet that obligation. But compliance with the law is not enough for this Administration. Rather, Plaintiff proposes a radical expansion of the preemption doctrine that would compel New Haven to exceed its legal duties and carry out this Administration's enforcement preferences. No other court has adopted Plaintiff's sweeping view of preemption doctrine, which is contrary to the plain language of the federal statutes at issue. The Court should reject these claims simply by applying settled law.

### A. Declining to Participate in Voluntary Federal Enforcement Is Not an Obstacle to Congress's Objectives.

Plaintiff argues that because Congress "authorized" the federal government to issue detainer requests and administrative warrants, New Haven is preempted from requiring a judicial warrant to detain individuals on behalf of the federal government. ECF No. 58 ("Opp.") at 13-14. But Congress has passed no law requiring states and localities to fulfill the federal government's detention requests, let alone prohibiting them from exercising their own authority to require a judicial warrant. "[T]hat ICE may use detainers consistent with the INA does not compel the conclusion that state or local officials must comply with those requests." *United States v. Cnty. of*

*Washtenaw*, 2026 WL 2453724, at *18 (E.D. Mich. Aug. 21, 2026).[1] This theory of preemption—that, where Congress "authorizes" federal agents to operate in a certain manner, local governments cannot direct their own officers to conform to their own rules—is radical, unprecedented, and unconstitutional.

Plaintiff also argues that local cooperation is "central" to federal immigration enforcement, and therefore New Haven's abstention from certain federal immigration enforcement activities is necessarily "about frustrating federal operations." Opp. at 14. Not so. Federal law clearly recognizes New Haven's option to participate in immigration enforcement but does not mandate it. *See* Mem. of Law at 15-16. New Haven's "choice … to refrain from participation cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal." *McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 592 (7th Cir. 2022).[2]

Plaintiff goes on to argue that "Congress *permitted* … localities to impose criminal punishment on an alien before the alien is removed from the country," and that this conferral of authority imposes an implied duty to transfer aliens to federal custody once local detention ends. Opp. at 14-15 (emphasis added). The Court should reject this "extraordinary" argument. *Cnty. of Washtenaw*, 2026 WL 2453724, at *16. "States and localities, of course, simply possess the

[1] Plaintiff also argues that the Order is obstacle preempted because it "specifically bar[s]" conduct "authorized under Section 287(g)." Opp. at 14. The Order does not mention § 287(g) agreements. In any case, it is indisputable that § 287(g) gives localities an *option* to assist federal immigration enforcement. *See, e.g.*, *United States v. New York*, 2026 WL 2225423, at *17 (N.D.N.Y. Aug. 3, 2026) (noting the statute "explicitly states that 'nothing in [subsection (g)] shall be construed to require any State or political subdivision of a State to enter into [a 287(g) Agreement]'").

[2] Plaintiff repeatedly cites the 1896 case *Davis v. Elmira Sav. Bank*, 161 U.S. 275 (1896), for the proposition that state law is obstacle preempted where it "impairs the efficiency" of federal action. *See* Opp. at 11-13. But *Davis* dealt with an "express[] conflict[]" between federal and state law. *Davis*, 161 U.S. at 283. "Impairs the efficiency" is not the standard for obstacle preemption. *See* Mem. of Law at 14-15.

sovereign power to enforce their criminal laws within their jurisdiction. They do not require permission to do so." *Id.*

**B. No Federal Law Expressly Preempts New Haven's Order.**

Plaintiff's claims of express preemption under 8 U.S.C. §§ 1373 and 1644 also fail.

**First**, the Order does not prohibit city employees from communicating with federal authorities about a person's citizenship or immigration status. *See* Mem. of Law at 19. Plaintiff's failure (and inability) to dispute this point is fatal, because it establishes that there is no conflict.

**Second**, Plaintiff attempts to expand the meaning of these statutes far beyond their plain language, arguing that "[b]y using the phrase 'information *regarding* the citizenship or immigration status,' Congress intended to encompass" all "facts that bear on an individual's citizenship or immigration status." Opp. at 18. Plaintiff is unable to cite any authority for that sweeping interpretation. And it fails to disclose that courts across the country have rejected this argument "[w]ithout exception." *See United States v. Illinois*, 796 F. Supp. 3d 494, 516 (N.D. Ill. 2025); *see also, e.g.*, *United States v. New York*, 814 F. Supp. 3d 266, 277-78 (N.D.N.Y. 2025); *United States v. California*, 921 F.3d 865, 891-92 (9th Cir. 2019); *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 373-76 (D.N.J. 2020).

Plaintiff's reference to legislative history to bootstrap this argument "ignore[s] well-established rules of statutory interpretation," *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1164 (9th Cir. 2019). "[A] court may engage with legislative history only when the plain meaning of a provision is ambiguous." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 422 (2d Cir. 2022). Sections 1373 and 1644 unambiguously "reach only information about an individual's citizenship or immigration classification . . . and not all personal information about an individual."

*United States v. New York*, 810 F. Supp. 3d 329, 350 (N.D.N.Y. 2025); *see also Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1164 (9th Cir. 2019) (similar).[3]

**Third**, Plaintiff fails to acknowledge that §§ 1373 and 1644—the only sections supporting the express preemption claim—cannot be preemption provisions because they regulate state and local governments, not private actors. Mem. of Law at 21-22. Instead, Plaintiff asserts that "the INA" as a whole regulates private actors and thus is preemptive. *See* Opp. at 21. That misdirection is unavailing. *See Illinois*, 796 F. Supp. 3d at 521–22 (rejecting this approach because it would permit Congress "to smuggle unconstitutional commands to States into specific provisions of a broader statute, and then rely on separate provisions for cover"). Moreover, Plaintiff's reliance on *State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020), is misplaced, as the Court *did not* hold that §§ 1373 and 1644 are proper preemption provisions. *See United States v. City of Rochester, et al.*, 2026 WL 2581845, at *5 n.1 (W.D.N.Y. Sept. 1, 2026) (rejecting United States' reliance on those cases); *see also* Mem. of Law at 22 n.23.

**Fourth**, Plaintiff argues that there is no presumption against preemption in express preemption cases. *See* Opp. at 22. This point is immaterial, as the preemption claims here fail based on the plain language of §§ 1373 and 1644 and the Order. *See United States v. New York*, 814 F. Supp. 3d 266, 276 n.5 (N.D.N.Y. 2025) (not reaching issue because "[e]ven without any presumption, Plaintiff's preemption claim fails").

## II. Enjoining the Welcoming City Order Would Violate the Tenth Amendment.

Plaintiff admits its goal is to "preclude" New Haven from setting policies and "bar[] state

---

[3] Plaintiff also argues that "[t]o the extent [the Order] prohibit[s] or restrict[s] local entities from 'maintaining' or 'exchanging' information regarding immigration status with federal agencies, [it is] preempted," Opp. at 20, but provides no authority or analysis in support. Thus, this argument is abandoned. *E.g.*, *Lewis v. Berryhill*, 2018 WL 1377303, at *9 n.7 (D. Conn. Mar. 19, 2018).

and local officials" from following them. Opp. at 36.[4] The Tenth Amendment prohibits that effort, and numerous courts have rejected the exact arguments Plaintiff makes here. *See* Mem. of Law at 2 n.1. Since New Haven's last filing, three more courts have joined the chorus, rejecting as unconstitutional commandeering Plaintiff's efforts to veto local policies that dedicate local resources to local concerns and leave federal immigration enforcement to the federal government.[5] Plaintiff seeks to circumvent the application of the anti-commandeering doctrine here in four ways; all fail.

**First**, Plaintiff recycles arguments the Supreme Court squarely rejected in *Printz,* 521 U.S. at 902–04, 933, attempting to downplay its demands as "modest measures." Opp. at 35–36. But there is no "modest measure" exception to the Tenth Amendment. Even where Plaintiff claims that a challenged program "serves very important purposes, is most efficiently administered by [local officers]," and "places a minimal and only temporary burden" upon officers, the Supreme Court has held that the federal government cannot "conscript the State's officers" where, as here, "the whole *object*" of the federal policy is "to direct" state officials. *Printz*, 521 U.S. at 932 (emphasis in original). Any "'balancing' analysis is inappropriate" because the implementation of such a law offends "the very *principle* of separate state sovereignty." *Id.* at 932 (emphasis in original).

**Second**, Plaintiff misconstrues the Second Circuit's decisions in *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999), and *State v. Dep't of Just.*, 951 F.3d 84, 113-14 (2d Cir. 2020) as obstacles to application of the Tenth Amendment here. Not so. In *City of New York*, the Second

[4] It cannot be, as Plaintiff claims, both that local officials' nonparticipation under the Order would "obstruct[]" the immigration system *and* that it does not seek to *mandate* city officials to collect information, detain noncitizens, and accrue enforcement costs. *See* Opp. at 37, 39.

[5] *See United States v. Minnesota*, 2026 WL 2085701, at *15; *Cnty. of Washtenaw*, 2026 WL 2453724 at *23; *New Jersey*, 2026 WL 2621025, at *9-10. As the New Haven Defendants have argued, even if the Court were to find that §§ 1373 and 1644 are preemptive, the Court would then have to address the constitutionality of those provisions. *See* Mem. of Law at 22 n.24.

Circuit "circumscribed" its analysis of § 1373 to the specific executive order in that case. 179 F.3d at 36-37. Moreover, *City of New York* rested its analysis on the distinction between "affirmative acts" and "prohibiting conduct" that the Supreme Court subsequently abrogated in *Murphy*. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 474–75 (2018); *see also* Mem. of Law at 30 & n.30. As the Second Circuit acknowledged, *Murphy* "clarified that prohibitions as well as mandates can manifest impermissible commandeering," *State*, 951 F.3d at 113, so *City* no longer governs. Plaintiff's reliance on *State* is likewise misplaced. In *State*, the Second Circuit expressly declined to rule on § 1373's facial legality, 951 F.3d at 113-14, and instead cabined its holding to Congress's power to condition grants under the Spending Clause, where the state retains the choice to accept or reject the funds. *Id.* at 113, 115. But *State* is inapposite because this case does not involve an exercise of Congress's Spending Clause power.

**Third**, Plaintiff claims that Congress "could have" required local officials to detain noncitizens to facilitate transfer into federal custody. Opp at 35-36. But that is immaterial because Congress did not so require. *See supra* at 2-3.[6]

**Fourth**, relying principally on *dicta* in *Printz*, Plaintiff attempts to invent an information-sharing exception to the anti-commandeering doctrine. Yet the *Printz* Court expressly *declined* to create such an exception. 521 U.S. at 918. Nor can Plaintiff rely on *Reno v. Condon,* 528 U.S. 14, which, as *Murphy* recognized, rested on the "principle" that the "anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage." 584 U.S. at 475–76. Here, Plaintiff seeks to control how New Haven exercises its exclusively governmental police power, a power that falls within its "inviolable sovereignty."

[6] And had Congress made detainers mandatory orders, rather than requests, such conscription of local officers would violate the Tenth Amendment. *See, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014).

*Printz*, 521 U.S. at 919; *accord Illinois*, 796 F. Supp. 3d at 523-24; *see also* Mem of Law at 22 n.24.

**III. New Haven's Order Is a Non-Discriminatory Directive Regulating Local Resources.**

The Welcoming City Order is a neutral directive that regulates only New Haven personnel and resources. In its effort to contort that permissible regulation into an impermissible incursion on federal authority, Plaintiff all but ignores the plain text of the Order and a vast body of caselaw rejecting materially similar claims. *See, e.g.*, Mem. of Law at 2 n.1, 23-25.[7] Because the Order does not regulate the federal government, and because Plaintiff acknowledges that there is no better-treated comparator, *see, e.g.*, ECF No. 58 at 30, the intergovernmental immunity claims fail.

**A. New Haven's Order Only Regulates Local Resources For Local Purposes.**

By Plaintiff's own description, the Order regulates only local personnel and resources. *See* Opp. at 27 (listing restrictions the Order places on "local law enforcement," "New Haven employees," and "the use of city resources"). Yet, Plaintiff asserts that this exclusively internal regulation places a "mandate" on the federal government to "procure judicial warrants to access detainees and receive information." Opp. at 32. It does no such thing. Under the Order, the federal government may carry out immigration enforcement in New Haven as it sees fit; it simply may not direct New Haven personnel and resources to carry out enforcement for it. Courts have repeatedly held that such a withdrawal of local resources—a decision the INA recognizes New Haven is empowered to make—does not regulate the federal government. *See, e.g.*, Mem. of Law at 23.

[7] A number of cases decided since the New Haven Defendant's Memorandum of Law was filed have likewise rejected these claims. *See Minnesota*, 2026 WL 2085701, at *21-22 (D. Minn. July 20, 2026); *Cnty. of Washtenaw*, 2026 WL 2453724, at *20-21; *United States v. Rochester*, 2026 WL 2581845, at *5-8 (W.D.N.Y. Sept. 1, 2026); *United States v. New Jersey*, 2026 WL 2621025, at *12-14 (D.N.J. Sept. 4, 2026).

The cases relied on by Plaintiff—all of which concern efforts to control the federal government, its employees, and contractors—are thus inapposite here.[8] In fact, several of the cases make explicit that their holdings would not apply to a local effort to manage local resources—the type of order at issue here. *See CoreCivic, Inc.*, 145 F.4th at 327 (distinguishing *McHenry Cnty.*); *King Cnty.*, 122 F.4th at 758 (distinguishing *California*, 921 F.3d 865, and *McHenry Cnty.*); *Geo Grp.*, 50 F.4th at 751 & n.1 (noting law limiting local assistance was not at issue). Simply put, "[l]ocalities do not directly regulate the federal government by withholding assistance they are not required to provide." *County of Washtenaw*, 2026 WL 2453724, at *20. This fact is fatal to Plaintiffs' claim.

**B. New Haven's Order Does Not Discriminate Against the Federal Government.**

As the Supreme Court has instructed—and *every* case cited by Plaintiff holds[9]—a state or local law "does not discriminate against the Federal Government and those with whom it deals

---

[8] *See, e.g.*, *Johnson v. Maryland*, 254 U.S. 51, 57 (1920) (state license requirement imposed on federal employees); *Hancock v. Train*, 426 U.S. 167, 179–80 (1976) (state permit requirement for federal facilities that was "tantamount to prohibiting operation of the federal installations"); *United States v. City of Arcata*, 629 F.3d 986, 991–92 (9th Cir. 2010) (local prohibition on federal military recruitment of minors); *United States v. California*, 173 F.4th 1060, 1067 (9th Cir. 2026) (state identification law "expressly applie[d] to federal officers"); *CoreCivic, Inc. v. Gov. of N.J.*, 145 F.4th 315, 325–28 (3d Cir. 2025) (state law banning private detention contracts that "destroy[ed]" federal government's ability to have immigration detention facilities in state); *United States v. King Cnty.*, 122 F.4th 740 (9th Cir. 2024) (similar, as to immigration charter flights); *GEO Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (similar, as to detention facilities).

[9] *See United States v. Washington*, 596 U.S. 832, 839 (2022) (finding state law impermissible because it "explicitly treat[ed] federal workers differently than state or private workers"); *North Dakota v. United States*, 495 U.S. 423, 438–39 (1990) (noting comparator requirement and finding law permissible where it "favored" the federal government); *CoreCivic*, 145 F.4th at 321 (noting comparator requirement); *King Cnty.*, 122 F.4th at 757 (finding local order impermissible because it "explicitly treat[ed federal] contractors . . . differently" than others); *California*, 921 F.3d at 882, 881, 884 (noting comparator requirement and contrasting state law treatment of state and local versus federal detention facilities); *Boeing Co. v. Movassaghi*, 768 F.3d 832, 842 (9th Cir. 2014) (stating that "[a] state or local law discriminates against the federal government if it treats someone else better than it treats the government" and finding state law impermissible where it imposed "more stringent" requirements on federal facilities than others).

unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S. 536, 544-45 (1983); *see, e.g.*, *Dawson v. Steager*, 586 U.S. 171, 175, 177 (2019) (requiring "differential treatment" of "similarly situated state and federal [actors]"). Yet, Plaintiff argues that "there is no need for comparators," because the Order "impose[s] burdens unique to the Federal Government by name and by its performance of a core federal function." Opp. at 28. Presumably, Plaintiff does not try to identify a comparator because it cannot.[10] But the mere fact the Order "affects an exclusively federal domain is not evidence of discrimination, and failure to identify a comparator ends the inquiry." *See, e.g.*, *New York I*, 810 F. Supp. 3d at 353. As courts have repeatedly held, while Plaintiff may prefer to rewrite the discrimination doctrine to achieve its preferred policy goals, the Supremacy Clause does not stretch so far. *See, e.g.*, Mem. of Law at 24–25.

## IV. Plaintiff's Imagined Injury Does Not Confer Standing to Challenge the Order.

Plaintiff fails to meet its burden to establish standing through clear factual allegations that "mak[e] it plausible that [it] did indeed suffer the sort of injury that would entitle [it] to relief." *See* Mem. of Law at 10-11. First, it fails to plead any specific facts establishing "financial harm" or costs incurred because of New Haven's Welcoming Order. Compl. ¶ 69.[11] Second, Plaintiff fails to allege specific violations of its "sovereign interest in the enforcement of federal law." Mem. of Law at 11. Plaintiff misleadingly omits any mention that the Order requires officials to follow federal law, *see id.* at 11–13 & n.18, and provides no explanation how an order that expressly requires compliance with federal law interferes with the enforcement of federal law.

[10] Plaintiff asserts that the Order does not bar "disclosure [of information] to any other law enforcement agency." Opp. at 30. That assertion misrepresents the plain text of the Order, which bars disclosure of confidential information to anyone unless a listed exception applies.

[11] Plaintiff's only specific allegations relate to the State of Connecticut and the City of Hartford. Compl. ¶¶ 60-61. These claims do not confer standing to challenge the Welcoming City Order. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (finding no standing against "non-injurious defendants").

Instead, Plaintiff relies on a theory of generalized "sovereign interest" standing, which other courts have rejected. *See, e.g.*, *City of Boston*, 833 F. Supp. 3d at 45 (noting "sweeping" implications of argument and United States's failure to cite any "on-point authority for this essentially limitless view of sovereign injury"). None of the precedents cited by Plaintiff supports its theory; instead, those cases base standing on specific factual allegations missing here. *See, e.g.*, *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (finding only that a qui tam relator could rely on concrete injury to the United States resulting from fraud to support his recovery and noting in dicta that a sovereign injury may arise from the "violation of [federal] laws" sufficient "to support a *criminal* lawsuit" (emphasis added));[12] *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982) (setting bar for standing in parens patriae action and noting specific "sovereign interests," all inapplicable here, that could confer standing *if interfered with*). Because it has not alleged facts specific to New Haven establishing that the Order interferes with federal law enforcement, Plaintiff lacks standing.

## V. Conclusion

For the reasons set forth herein and in the New Haven Defendants' opening memorandum, the New Haven Defendants' Motion to Dismiss should be granted.

---

[12] The other cases relied upon by Plaintiff are not only non-binding, out-of-circuit precedent, but in any event do not support Plaintiff's claim, since they all involved specific, well-pleaded concrete harm—in stark contrast to the vague and conclusory allegations against New Haven made here. *See, e.g.*, *United States v. Missouri*, 114 F.4th 980, 984 (8th Cir. 2024) (standing based on "uncontroverted evidence that implementation of the [state law] impaired [its] interest [in enforcing federal law], because state officials withdrew resources and manpower"); *United States v. Florida*, 172 F.4th 1201, 1212 (11th Cir. 2026) (basing standing on alleged discrimination in violation of a federal statute); *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1165 (10th Cir. 1996) (relying on the fact that "federal prosecutors . . . changed their practice" to comply with the challenged state rule). Another nonbinding precedent Plaintiff invokes makes only a passing reference to "injury" required for preliminary injunctions and involves no constitutional standing analysis. *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012).

Respectfully submitted,

DEFENDANTS

CITY OF NEW HAVEN
JUSTIN ELICKER

By: */s/ Christopher M. Mattei*
Christopher M. Mattei (ct27500)
Margaret M. Donovan (ct31787)
Colin S. Antaya (ct31355)
KOSKOFF KOSKOFF & BIEDER
350 FAIRFIELD AVE.
BRIDGEPORT, CT 06604
TEL: 203-336-4421
FAX: 203-368-3244
cmattei@koskoff.com
mdonovan@koskoff.com
cantaya@koskoff.com

By: */s/ Allison R. Jacobs*
Allison Jacobs (ct31207)
Corporation Counsel for the City of New Haven
Office of the Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
475-331-3244
ajacobs@newhavenct.gov

By: */s/ Harold Hongju Koh*
Harold Hongju Koh (ct01347)[13]
Bruce C. Swartz* (DC Bar # 358928)
Peter Gruber Rule of Law Clinic[14]
Yale Law School
127 Wall Street, P.O. Box 208215
203-432-4932
harold.koh@ylsclinics.org
mary.hahn@ylsclinics.org
bruce.swartz@yale.edu

[13] Law-student interns Kit Beyer, John David Cobb, Emily- Elledge, Riler Holcombe, Jake Mattis, and Henry Wykowski contributed to this brief's drafting under supervision by counsel.
[14] This brief sets forth the position of the signatories, as represented by counsel and law-student members of the Peter Gruber Rule of Law Clinic, but does not purport to state the views of Yale Law School or Yale University.

** Application for Admission Pro Hac Vice Forthcoming.*

By: */s/ Toby Merrill*

Toby Merrill** (MA Bar # 601071)
Erin Monju** (DC Bar # 90036952)
Kayla Svihovec** (DC Bar # 1735588)
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
toby.merrill@publicrightsproject.org
erin.monju@publicrightsproject.org
kayla.svihovec@publicrightsproject.org

*Not licensed to practice law in California.*