**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff*<br><br>v.<br><br>STATE OF CONNECTICUT, ET AL.<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>:<br>: | 3:26-CV-00568-AWT<br><br><br><br><br><br>SEPTEMBER 29, 2026 |

**REPLY IN SUPPORT OF**
**THE STATE DEFENDANTS' MOTION TO DISMISS**

Plaintiff's opposition restates arguments that have been rejected many times. *E.g.*, *United States v. City of Rochester*, Docket No. 25-CV-6226-FPG, 2026 U.S. Dist. LEXIS 197777 (W.D.N.Y. Sep. 1, 2026); *United States v. County of Washtenaw*, Docket No. 26-11166, 2026 U.S. Dist. LEXIS 189274 (E.D. Mich. Aug. 21, 2026); *United States v. Minnesota*, Docket No. 25-cv-3798 (ECT/JFD), 2026 U.S. Dist. LEXIS 159794 (D. Minn. July 20, 2026); *United States v. City of Boston*, 833 F. Supp. 3d 30 (D. Mass. 2026); *United States v. Colorado*, 831 F. Supp. 3d 1108, 1112 (D. Colo. 2026); *United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025). It does not even acknowledge these contrary decisions, much less attempt to distinguish them or explain why they are wrong. This Court should join the growing number of federal courts that have declined to accept Plaintiff's extreme positions and dismiss the action in full.[1]

**I. § 1373(a) Does Not Expressly Preempt the Information Sharing Provisions**

The Trust Act's Information Sharing Provisions are not expressly preempted by 8 U.S.C. § 1373(a). (ECF No. 31-1, pp. 10–15.) That federal law only restricts sharing information

[1] As noted in Defendants' opening brief, the Guidance lacks the force of law, so it cannot preempt federal law or violate intergovernmental immunity. For this reason, Defendants only reference the Trust Act in this reply, but its arguments apply with equal force to the Guidance.

"regarding the citizenship or immigration status," while the Information Sharing Provisions govern "custody status or release" dates and "confidential information" (e.g., sexual orientation).

### A. Ancillary Terms in § 1373(a) Are Red Herrings

Plaintiff focuses on ancillary terms in § 1373. It notes that Congress prohibited restrictions on sharing information "in any way." (ECF No. 58, p. 18) (quoting § 1373(a)). But "way" refers to *methods* of communication—not the *subject* of a communication, which is what this suit concerns. *See Director of the OPM v. Moulton*, 155 F.4th 1331, 1335 (Fed. Cir. 2025). Likewise, Plaintiff points to the "notwithstanding" clause and says this means § 1373 "override[s] conflicting provisions." (ECF No. 58, p. 18.) Standing alone, that provision does no work though. Plaintiff must still identify a "conflicting provision[]." *Id.* It does not.

### B. The Word "Regarding" Does Not Do What Plaintiff Claims

Plaintiff concedes that the term "citizenship or immigration status" merely "refers to a person's legal classification under federal law." (ECF No. 58, p. 19.) But it then argues that the modifier "regarding" is a "broadening term," which expands the statute to reach other types of information, too. (*Id.*, pp. 18, 20.) It vaguely argues this includes personal information, like an individual's address, social security number, and financial records, because it can be "relevant" to citizenship status. (*Id.*, p. 18.) It also thinks an individual's release date is sufficiently related to an individual's "citizenship or immigration status" because that date is the "point an alien becomes removable." (*Id.*)

Plaintiff "has tried this argument before" and "no court has accepted that reading." *Washtenaw*, 2026 U.S. Dist. LEXIS 189274, at *33–34. Plaintiff even admits it. *See id.* at n.7.

The plain text does not support Plaintiff's position. For instance, Plaintiff conflates "citizenship or immigration status" under § 1373 with "remov[ability]" under 8 U.S.C. § 1231(a)(4)(A). These are distinct concepts. As multiple courts have held, "§ 1231(a)(4)(A) only

specifies when a noncitizen who has already been deemed removable may be removed. It doesn't concern their immigration status, i.e., 'an individual's category of presence in the United States.'" *Washtenaw*, 2026 U.S. Dist. LEXIS 189274, at *35 (cleaned up); *see also, e.g.*, *Illinois*, 796 F. Supp. 3d at 517. Even if "regarding" is a "broadening term," (ECF No. 58, p. 22), it only expands the reach of concepts that it *already references* ("citizenship or immigration status"). It does not expand the statute to reach concepts that are *entirely new* (personal information; removability).

Plaintiff also searches for support in the structure of § 1373. It argues that the term "regarding," must be expansive because it is included in § 1373(a), but not § 1373(c), and both provisions otherwise address "citizenship or immigration status." (ECF No. 58, pp. 20–21.) Courts reject this argument, as well. Some conclude that it overemphasizes a semantic distinction between the two sections, while ignoring their overarching similarity. The use of an identical object phrase ("citizenship or immigration status") strongly suggests that these provisions should be read reciprocally. *See United States v. California*, 921 F.3d 865, 892 (9th Cir. 2019). Other courts hold that the two sections concern two fundamentally different issues: § 1373(a) is about which *type* of information a state can communicate, while § 1373(c) is about the *purpose* for which a state can request information. *See Illinois*, 796 F. Supp. 3d at 517–18. Either way, it is clear that when Congress truly wanted to reach "broader swaths of information" in the INA, it did not use such subtle devices—it did so clearly and with "more expansive phrases." *California*, 921 F.3d at 892 (citing 8 U.S.C. § 1360(a) ("such other relevant information as the Attorney General shall require") and § 1360(b) ("Any information in any records kept by any department or agency")).

Plaintiff also cites Senate and House congressional reports as evidence of legislative intent. (ECF No. 58, p. 21.) The Senate report is of no help at all. It simply replaces the term "information regarding . . . immigration status" from § 1373 with the term "immigration-related information."

S. Rep. No. 104-249, at 19–20 (1996). And Plaintiff's quotation from the House report omits critical context. In full, the report uses the word "or" to distinguish between the concepts of "immigration status" and "presence, whereabouts, or activities." H.R. Rep. No. 104-725, at 383 (1996). This "suggests that 'information regarding the immigration status' *does not* include 'the presence, whereabouts, or activities' of noncitizens"—the opposite of what Plaintiff argues. *California*, 921 F.3d at 892 n.18 (emphasis added).

Plaintiff also ignores the practical consequences. It concludes that "regarding" means "facts that bear on" or are "relevant to" immigration status or citizenship, and arbitrarily lists several types of information. (ECF No. 58, p. 20.) But a mere "relevan[cy]" test would be wildly overinclusive. "[T]he range of facts that might have some connection to federal removability or detention decisions is extraordinarily broad," and would include things like "vaccination history, education, financial resources, and membership in 'the Communist or any other totalitarian party.'" *California*, 921 F.3d at 892 n.17 (quoting 8 U.S.C. § 1182). Plaintiff fails to "suggest any limit to [its] interpretation of the statute." *County of Ocean*, 475 F. Supp. 3d at 375.

### C. Plaintiff Tries to Manufacture a Nonexistent Conflict with the Trust Act

Plaintiff says the Trust Act "expressly forbid[s] (in all but unusual cases)" communication between state and federal officials about custody status or release dates, or confidential information. (ECF No. 58, p. 20.) Not so. It expressly *allows* communication about release dates, so long as the individual is also informed. Conn. Gen. Stat. § 54-192h(e)(1). Similarly, state law enforcement can share confidential information to whatever extent Congress actually requires. *See id*. § 54-192h(e)(1), (d). None of this is "unusual"—the law clearly provides for communication and Plaintiff cites zero examples where a request like this was refused.

## II. The Trust Act Is Not an Obstacle to a Congressional Purpose

Plaintiff argues that the presumption against preemption does not apply here because the federal government traditionally regulates immigration. (ECF No. 58, p. 24.) The presumption "does not rely on the absence of federal regulation" though. *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009). Instead, courts "rely on the presumption because [of] respect for the States as independent sovereigns in our federal system." *Id.*; *see also, e.g.*, *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) ("we will not presume that Congress, in enacting the INA, intended to oust state authority to regulate the employment relationship"); *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 766 (9th Cir. 2022) (presumption applies "even if the state law touche[s] on an area of significant federal presence, such as immigration" (cleaned up)).

On the merits, the premise of Plaintiff's obstacle preemption argument is that Congress wants states to enforce federal immigration laws. Notably, though, Plaintiff only cites provisions of the INA telling *federal* officials to act. *E.g.*, (ECF No. 58, p. 15) ("Congress authorized the Federal Government"); (*id.*) ("DHS is also authorized"); (*id.*, p. 17) ("Congress requires federal immigration agents" (emphasis omitted)). "[T]he various statutory provisions to which the United States points direct *federal* activities, not those of state or local governments." *California*, 921 F.3d at 887 (emphasis in original). And "these provisions define the extent of the federal government's immigration enforcement interests." *Minnesota*, 2026 U.S. Dist. LEXIS 159794, at *53.

Moreover, Plaintiff flatly ignores other parts of the INA that contradict its position. Consider two examples. First, Plaintiff argues that States *must* cooperate—"cooperation is not optional"—with federal immigration enforcement. (ECF No. 58, p. 17.) But it ignores related components of the INA that are undisputedly optional, like detainers and agreements to carry out federal immigration activities. *See Illinois*, 796 F. Supp. 3d at 528 ("[d]etainers are requests, not

requirements"); 8 U.S.C. § 1357(g) ("[n]othing in this subsection shall be construed to require any State . . . to enter into an agreement"). As a second example, Plaintiff complains that "notice to aliens of detainers" frustrates federal objectives and that "the INA does not contemplate any such notice in connection with detainers." (ECF No. 58, p. 16.) But DHS's own detainer forms provide for notice. (ECF No. 31-1, p. 20.) Plaintiff does not address these inconsistencies.

Plaintiff nonetheless argues that States must assist the federal government in immigration enforcement based on an implied "understanding." (ECF No. 58, p. 17.) As with many of Plaintiff's other arguments, courts rightly reject this theory. Some do so because it ignores parts of the INA that, as discussed above, expressly make State cooperation optional. Accepting Plaintiff's argument "would require recharacterizing" these optional provisions "as mandatory (contrary to their plain meaning)." *Minnesota*, 2026 U.S. Dist. LEXIS 159794, at *53. Other courts observe that it ignores the Tenth Amendment—i.e., Congress *did* not force states to enforce federal immigration law because it *could* not do so. *See California*, 921 F.3d at 888.

### III. Plaintiff's Cited Provisions of the INA Have No Preemptive Force

The provisions of the INA Plaintiff cites have no preemptive force because they do not regulate private actors. (ECF No. 31-1, pp. 24–25.) Plaintiff does not argue otherwise. Instead, it contends that these provisions draw preemptive force from other provisions of the INA, which regulate private actors in different respects. (ECF No. 58, p. 23.)

"Many courts" disagree. *Rochester*, 2026 U.S. Dist. LEXIS 197777, at *17–18 (citing cases). They conclude "there is no way to read §§ 1373 or 1644 as regulating anyone other than states and their political subdivisions." *Id*. "Nothing in *Murphy* [*v. NCAA*, 584 U.S. 453 (2018)] or other Supreme Court precedents instruct courts to look beyond what actors a statute seeks to regulate," like downstream effects or broad policy goals. *County of Ocean*, 475 F. Supp. 3d at 372. Moreover, Plaintiff's theory would create an "end run on the Tenth Amendment," "allow[ing]

Congress to smuggle unconstitutional commands to States into specific provisions of a broader statute, and then rely on separate provisions for cover." *Illinois*, 796 F. Supp. 3d at 521–22.

Plaintiff misleadingly quotes *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) for the proposition that the Court must consider "the federal statute as a whole." *Id*. at 373. But that quote is about identifying Congress's objectives for purposes of obstacle preemption—not for purposes of determining whether the statute has preemptive force in the first place.

## IV. Intergovernmental Immunity

### A. The Trust Act Does Not Directly Regulate the Federal Government.

Plaintiff argues that the Trust Act "violate[s] the United States' intergovernmental immunity because [it] purport[s] to regulate the Federal Government's core functions" and because it "do[es] not impose mere incidental obstacles to the enforcement of federal immigration law." (ECF No. 58, pp. 32, 36).

Not so. Plainly, the Trust Act only regulates states and localities. Moreover, a law does not automatically violate intergovernmental immunity just because affects federal officials. "[T]he key question is whether state law seeks to improperly 'control' the employee's federal duties, or whether the law only 'might affect incidentally the mode of carrying out the employment . . . .'" *United States v. New York*, 810 F. Supp. 3d 329, 352 (N.D.N.Y. 2025) (cleaned up); *see also North Dakota v. United States*, 495 U.S. 423, 434–35 (1990). So, courts uniformly reject Plaintiff's claim that laws like the Trust Act—which only regulate state or local officials—unlawfully regulate the federal government. *E.g., Rochester*, 2026 U.S. Dist. LEXIS 197777, at *29–30.

Plaintiff's cases—*Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) and *United States v. King County*, 122 F.4th 740 (9th Cir. 2024)—offer no support. (ECF No. 58, pp. 33–35.) They are "factually distinct and involve[d] local governments acting as review boards overseeing federal decisions." *Illinois*, 796 F. Supp. 3d at 535.

### B. The Trust Act Does Not Discriminate against the Federal Government

Plaintiff must "identify some actor similarly situated to the federal government" to make out a discrimination claim. (ECF No. 31-1, pp. 29–30). Plaintiff disagrees and says "[a] comparator is unnecessary." (ECF No. 58, p. 30.) Courts say the opposite. *See Illinois*, 796 F. Supp. 3d at 533, 534 ("a comparator is necessary" and "failure to identify a comparator ends the inquiry"). That is because "[d]ifferential treatment is critical to a discrimination-based intergovernmental immunity claim." *McHenry Cty. v. Raoul*, 44 F.4th 581, 594 (7th Cir. 2022) (cleaned up). And to demonstrate differential treatment, "Plaintiff must identify a comparator that is treated more favorably under the law." *Rochester*, 2026 U.S. Dist. LEXIS 197777, at *20–21 (citing cases). Nor is "[t]he mere fact that [a state or local law] touches on an exclusively federal sphere . . . enough to establish discrimination." *McHenry*, 44 F.4th at 594 (cleaned up). Plaintiff's sole case offered in support of its position says nothing different. (ECF No. 58, p. 28) (quoting *North Dakota v. United States*, 495 U.S. 423, 438 (1990)). Rather, it confirms that "[t]he State does not discriminate against the Federal Government . . . unless it treats someone else better than it treats them." *North Dakota*, 495 U.S. at 438 (cleaned up).

Despite disclaiming the need for a comparator and seemingly conceding that none exists, Plaintiff suggests that state and local law enforcement might qualify. (ECF No. 58, p. 32.) But state and local law enforcement do not request detainers or information for purposes of federal immigration enforcement. So, courts reject this argument—while it "gesture[s] generally at all non-federal law enforcement" it does not "identif[y] any specific law enforcement agency or explain[] how it is similarly situated to ICE." *Illinois*, 796 F. Supp. 3d at 533–34. Instead, "[i]t is unlikely that a comparator exists, for the United States concedes that only the federal government is authorized to enforce civil immigration law." *New York*, 810 F. Supp. 3d at 353.

Finally, even if a comparator did exist—it does not—Plaintiff fails to establish that the Trust Act "impose[s] a burden on the federal government in a way the intergovernmental immunity doctrine considers problematic," since it "simply decline[s] to ease the burden of civil immigration enforcement" on federal officers. *New York*, 810 F. Supp. 3d at 354 (cleaned up).

**V. Plaintiff's Reading of the INA Creates Anticommandeering Problems**

Plaintiff fails to acknowledge the decisions that have found anticommandeering problems with its theory of how the INA operates to control states. *E.g.*, *Minnesota*, 2026 U.S. Dist. LEXIS 159794, at *43–46 (citing cases).

Instead, Plaintiff relies on *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999) for the proposition that a state cannot "obstruct[]" federal programs by refusing to cooperate with them. (ECF No. 58, p. 38.) But that case rested on a distinction between federal laws that "directly compel" states to act (permissible, according to *City of New York*) and those that prohibit states "from directly restricting" compliance with federal law (impermissible, according to *City of New York*). The Supreme Court has since called this distinction "empty"—both types of legislation are prohibited. *Murphy*, 584 U.S. at 474 (rejecting the argument that "prohibiting a State from enacting new laws is another matter"). "As several courts or judges, including in the Second Circuit, have pointed out," *City of New York* is "hard to square with the Supreme Court's decision in *Murphy*." *Washtenaw*, 2026 U.S. Dist. LEXIS 189274, at *39 (citing cases). Plaintiff makes little attempt to defend *City of New York* in light of *Murphy*.

Plaintiff also argues that Congress "could have" forced, i.e., commandeered, states to assist with federal immigration enforcement. (ECF No. 58, p. 38.) Again, courts disagree. *E.g.*, *Washtenaw*, 2026 U.S. Dist. LEXIS 189274, at *61. And Plaintiff's reliance on *Hodel v. Virginia Surface Mining & Reclamation Assn.*, 452 U.S. 264, 290 (1981) and *FERC v. Mississippi*, 456 U.S. 742, 745 (1982) for this point is misplaced. Among other reasons, neither of the federal laws

at issue in those cases were compulsory, as Plaintiff contends the INA is here. *See Murphy*, 584 U.S. at 476 (distinguishing *Hodel* because "the federal law *allowed* but did not *require* the States to implement a federal program" and distinguishing *FERC* because "the federal law directed state utility regulatory commissions to consider, but not necessarily to adopt, federal . . . standards" (emphasis in original)).

Finally, Plaintiff argues that there is a "provision of information" exception to the anticommandeering doctrine. But, as in other cases, it "has not pointed to any case recognizing such an exception. Nor has it proffered a reason to think that such an exception should be adopted." *Illinois*, 796 F. Supp. 3d at 524. Its only authority, *Printz v. United States*, 521 U.S. 898 (1997), expressly declined to consider that issue. *See id.* at 918.

**VI. Plaintiff Does Not Respond to Defendants' Standing Arguments**

Plaintiff concedes that it lacks standing to challenge the Guidance—it does not even mention this argument in its opposition. And its only response to Defendants' wrong-party argument is in a conclusory footnote. (ECF No. 58, p. 40 n.3.) Plaintiff merely cites state statutes and constitutional provisions that establish that the Governor and Attorney General have general duties to enforce state law. But, as Defendants explained, those duties are insufficient to make them proper parties here. (ECF No. 31-1, pp. 34–35.) Plaintiff's reference to *Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 829 (2d Cir. 2025) actually helps Defendants, as it is consistent with their argument about the *Ex Parte Young* exception to Eleventh Amendment immunity.

Respectfully submitted,
DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL

By: /s/ *Michael Rondon*
Michael Rondon (ct31022)
Edward Rowely (ct30701)

Assistant Attorneys General
Office of the Attorney General
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Tel: (860) 808-5020
Fax: (860) 808-5347
Michael.rondon@ct.gov
Edward.Rowley@ct.gov

**CERTIFICATION**

I hereby certify that on September 29, 2026, a copy of the foregoing was electronically filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's system.

/s/ *Michael Rondon*
Michael Rondon (ct31022)
Assistant Attorney General